UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MOHAMMED AHMED HASSAN             CIVIL ACTION NO. 14-cv-2825
ABDALLAH OMRAN

VERSUS                            JUDGE FOOTE

STEVE PRATOR, ET AL               MAGISTRATE JUDGE HORNSBY


## REPORT AND RECOMMENDATION

**Introduction**

Mohammed Ahmed Hassan Abdallah Omran ("Plaintiff") is an immigration detainee who was previously held as a federal pretrial detainee at the Caddo Correctional Center ("CCC"). Plaintiff filed this civil action to complain that the collect call telephone policy at CCC violated his First Amendment rights. Before the court are motions for summary judgment filed by Plaintiff (Doc. 94) and Defendants (Doc. 98). For the reasons that follow, it is recommended that Defendants' motion be granted and that Plaintiff's motion be denied.

**Relevant Facts**

Federal immigration agents attempted to place Plaintiff on flights back to his native Egypt, but Plaintiff refused to cooperate with efforts to board him. He screamed and yelled that he was being kidnapped and told pilots that he intended to be disruptive, which caused the pilots to refuse to allow him on board. The United States Attorney indicted Plaintiff with two counts of failure to depart.

Plaintiff was detained at CCC from late April 2014 until early February 2015 (just over nine months) while he awaited his federal trial. Plaintiff, who insisted on representing himself at his jury trial, was convicted and sentenced to six months imprisonment. U.S. v. Omran, 14 CR 00035. Plaintiff represents that he has now served his criminal sentence and is being held as an immigration detainee at a facility in south Louisiana.

During the months Plaintiff was housed at CCC, Policy No. S-180R provided that the facility "will provide toll telephones in Inmate/Offender Housing Units and Offender Living Areas to allow Inmates/Offenders adequate means of communication outside of the Facility." The policy provided that "calls initiated from Inmate/Offender telephones within the "Housing Units/Living Areas will be collect calls only."

Plaintiff filed an administrative grievance and complained that inmates "should be allowed to use the fund in our account to call family, friends, and other people." He stated that the "way it works now" is the person who is being called has to create an account with the phone company and deposit money in it for an inmate to call them. He added that some persons, especially lawyers and investigators who receive many calls from inmates, are less willing to accept inmate phone calls if they have to pay for them. Plaintiff noted on his grievance form that some jails use calling cards sold through the commissary, and others provide inmates with a PIN that allows phone calls to be charged to the inmate's trust account. Plaintiff complained that the CCC policy "violated the First Amendment right of freedom of speech."

Jail officials, under the administrative grievance system, could either (1) accept a grievance and refer it to a responsible staff member to respond or (2) reject the grievance for certain procedural reasons such as untimeliness, use of profane language, or other inmates had already filed a similar or identical grievance.  A sergeant responded to the grievance by checking a box to indicate that it was rejected, but he did not state one of the procedural reasons provided in the rules.  Instead, he wrote that other options had been tried in the jail, but often times inmates stole or misused another inmate's PIN or account number.  He added that the CCC policy safeguarded the inmates.  Plaintiff then filed this suit.

Defendants indicated during discovery that inmates had available a method of placing calls other than the traditional "collect call" where the recipient of the call pays the charge.  Robert Montoya, compliance coordinator at CCC for over nine years, explains in a declaration made pursuant to 28 U.S.C. § 1746 that CCC interprets the reference to "collect calls" in S-180R to include both calls paid for by the recipient and calls debited from a prepaid account detainees can set up with City Tele Coin, Inc., the company that administers calls from the jail.

Montoya explains that a detainee may submit a request for transfer of funds, which is typically processed within 48 hours, and CCC does not charge the inmate for transferring funds to City Tele Coin.  He states that this has been available for at least the last five years, and detainees frequently use both available options to pay for calls.  Montoya states that the current policy is advantageous, in part, because it eliminates a potential for theft or misappropriation that is present in other systems such as the use of debit cards.

Montoya states that CCC provides 12 phones in each of the main housing units for inmates to place calls. The phones are available during recreation time, which typically totals eight hours each day. Detainees are also allowed to communicate with persons outside the jail by mail or in-person visits.

**Limited Relief Available**

Plaintiff's complaint (Doc. 5) prayed for (1) an injunction ordering Sheriff Prator and the other defendants to provide CCC inmates with other options for making phone calls by using funds in their inmate account, (2) a declaration that Plaintiff's constitutional rights were violated, (3) an award of compensatory and punitive damages of $20,000, and (4) recovery of all court fees.

The court explained to Plaintiff early in this litigation that much of what he seeks is not available under the law. His request for injunctive relief with regard to CCC phone policy was rendered moot when Plaintiff was transferred to the Pine Prairie immigration detention facility in south Louisiana. A prisoner's transfer to another facility "render[s] his claims for declaratory and injunctive relief moot." Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive and declaratory relief based on exposure to asbestos were mooted by transfer to another prison). See also Cooper v. Sheriff, Lubbock County, 929 F.2d 1078, 1084 (5th Cir. 1991) (claims for injunctive relief based on denial of food at prior jail were moot). Plaintiff argues that the Government might one day prosecute him for another crime, and he could again be housed at CCC. Any suggestion of injunctive relief

based on that remote possibility is "too speculative to warrant relief." <u>Herman</u>, 238 F.3d at 665.

Plaintiff's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e)'s provision that no federal civil action may be brought by a prisoner for mental or emotional injury without a prior showing of physical injury. This requirement applies to all federal civil actions in which a prisoner alleges a constitutional violation, including First Amendment claims that are not usually accompanied by physical injury. <u>Geiger v. Jowers</u>, 404 F.3d 371, 374-75 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.").

The only forms of relief available to Plaintiff, if he prevails on the merits, are nominal and punitive damages. They are not barred by the physical injury requirement. <u>Hutchins v. McDaniels</u>, 512 F.3d 193, 197-98 (5th Cir. 2007); <u>Boyd v. Driver</u>, 495 Fed. Appx. 518, 524 (5th Cir. 2012). Nominal damages are typically $1. Punitive damages are available in a Section 1983 case only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 103 S.Ct. 1625 (1983); <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir. 2003).

Accordingly, even if Plaintiff were to prevail on the merits and prove that the CCC phone system violated the First Amendment, his victory would likely result in no more than a $1 award. The relative futility of the litigation was explained to Plaintiff in detail several

months ago, but it did not deter his aggressive approach to the case. This is not surprising, as Plaintiff has filed several frivolous complaints and appeals, which has resulted in more than one warning from the Fifth Circuit and a recent recommendation that he be banned from filing new actions without the prior consent of a district judge. Omran v. Wyche, 17 CV 0064.

**First Amendment Claim**

### A. Phone Access Was Constitutional

Turning to the merits, the Fifth Circuit has ruled that prisoners have "no right to unlimited telephone use." Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir. 1982). But it has recognized that other courts have observed that a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of a penal institution. Waganfeald v. Gusman, 674 F.3d 475, 485 (5th Cir. 2012), citing Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) and Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989).

Such decisions recognize that maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation of the retained constitutional rights of both convicted prisoners and pretrial detainees. Thus, prison and jail officials are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Waganfeald, 674 F.3d at 485 (jailer was not obligated to allow pretrial detainees to use cell phones when land lines were disrupted by a hurricane for

several days).  District courts have also stated that detainees have a limited right to telephone access, but jailers may impose rational limitations within their broad discretion to administer the conditions of confinement.  DeGrate v. Toney, 2009 WL1309728, *6 (W.D. La. 2009); Hogan v. Terrebonne Parish Criminal Justice Complex, 2015 WL 4716044, *4 (E.D. La. 2015).

The undisputed summary judgment evidence reflects that Plaintiff was able to place traditional collect calls or transfer his own funds to the telephone company to pay for calls he placed.  The latter option would have resolved his concerns about persons being unwilling to accept calls for which they had to pay.  Plaintiff believes that he his ideas for a phone system would be better, especially for his needs, but the constitution does not mandate that the sheriff adopt the plan that is best suited for Plaintiff.  It affords him discretion to adopt a reasonable plan that suits the needs of security and order at his jail, and the evidence shows that he has adopted such a plan.  These facts do not permit a finding of a First Amendment violation, so all Defendants are entitled to summary judgment.

### B. Plaintiff's Other Arguments

Plaintiff accuses Defendants of lying when they say the method of funding calls with his own money was available to him.  Plaintiff points to the allegations in his complaint and argues that the court must accept them as true, but that rule applies only when assessing a motion to dismiss under Rule 12(b)(6).  This is a summary judgment contest under Rule 56.

Where the plaintiff bears the burden of proof at trial, the moving defendant satisfies his initial Rule 56 burden by demonstrating an absence of evidence to support the plaintiff's case. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). The burden then shifts to the plaintiff to go beyond his pleadings and show by competent summary judgment evidence specific facts showing that there is a genuine issue for trial. He cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Celtic Marine Corp. v. James C. Justice Companies, Inc., 760 F.3rd 477, 481 (5th Cir. 2014). Defendants presented competent summary judgment evidence that challenged the allegations in the complaint and shifted the burden to Plaintiff, but neither Plaintiff's own motion nor his opposition to the defense motion was supported by competing evidence on that issue.

Plaintiff also complains that his grievance was improperly rejected, but an inmate "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). The federal court does not oversee the procedural propriety of the administration of a grievance, and there is no claim for any such mishandling.

Plaintiff reasons that the only potentially proper procedural reason to reject his grievance was that other grievances were already pending on the subject, which he argues undermines the Defendants' claim that there had not been similar complaints by other inmates. The ARP procedure is a relatively informal one for the use of prisoners and jail staffers. It is not subject to the same rules as judicial pleadings or otherwise available to establish through implication or estoppel that there were other complaints. See Jones v.

<u>Bock</u>, 127 S.Ct. 910, 922-23 (2007) (the applicable procedural rules are those in the prison grievance plan, not the PLRA or rules imposed by a federal court); <u>Johnson v. Johnson</u>, 385 F.3d 503 (5th Cir. 2004) (federal law requires grievance give officials "fair notice" of the complaint). In any event, (1) it is likely the deputy who responded simply made a mistake in rejecting it rather than accepting it and addressing the merits, and (2) it is irrelevant whether there were complaints by other inmates.

Plaintiff alleges that CCC officials charged a $10 fee for the transfer of funds to the City Tele Coin account. Compliance coordinator Montoya stated under penalty of perjury that "CCC does not charge the inmates for transferring funds to City Tele Coin." Plaintiff claims that this is a lie, but he presents nothing but allegations in unsworn memoranda, which are not competent summary judgment evidence. <u>Larry v. White</u>, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

Plaintiff makes similar complaints that neither the jail's fund-transfer form nor inmate handbook expressly explain that inmate funds may be transferred to an account at City Tele Coin. That does not mean that such a process was not available. Perhaps the handbook and other instructions could have been more comprehensive, and perhaps Plaintiff would have learned of the option if he had taken a different approach to requesting help with paying for phone calls. Plaintiff chose to file a First Amendment grievance and launch a federal lawsuit, so he did not learn of the alternative until he was transferred to another facility. That is unfortunate, but it is not grounds to continue this litigation. Defendants have demonstrated that they are entitled to summary judgment with respect to all claims.

Plaintiff has also filed a Motion for Evidentiary Hearing (Doc. 103) in which he contends that Sgt. Montoya's statements are "inadmissible just as the self-serving statements of the defendants are not evidence." Montoya's statement is, however, perfectly admissible in a summary judgment contest. "Evidence proffered by one side to support or defeat a motion for summary judgment will inevitably appear 'self-serving,'" but it is still admissible if based on personal knowledge and not conclusory. <u>Dallas/Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc</u>., 819 F.3d 245, 254 n. 14 (5th Cir. 2016).

Plaintiff argues that he has a right to confront Montoya at a hearing and examine his truthfulness, but Rule 56 does not require an oral hearing. <u>Southwestern Bell Telephone Co. v. City of El Paso</u>, 346 F.3d 541, 546 (5th Cir. 2003). It is an issue left to the discretion of the district court, and many courts in this circuit resolve almost all motions without a live or oral hearing. <u>Garza-Trevino v. New England Financial</u>, 320 Fed. Appx. 203, 206 (5th Cir. 2009). Plaintiff had two opportunities—his own motion and his opposition to the Defendants' motion—to submit competing summary judgment evidence, but he did not do so.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 98) and Motion for Evidentiary Hearing (Doc. 103) be denied.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 98) be granted and all claims against all Defendants be dismissed with prejudice.

## Objections

Page 10 of 11

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of April, 2017.



Mark L. Hornsby
U.S. Magistrate Judge